# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KHINE K., | ) Case No. 8:25-cv-00448-SP |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM OPINION AND** |
| FRANK J. BISIGNANO, | ) **ORDER** |
| Commissioner of Social Security | ) |
| Administration, | ) |
| Defendant. | ) |
| | ) |
| | ) |

## I.

## <u>INTRODUCTION</u>

On March 7, 2025, plaintiff Khine K. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). The parties have fully briefed the matter in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the administrative law judge ("ALJ") properly considered plaintiff's subjective symptom statements connected to her mental health impairments. Plaintiff's Opening Brief ("P. Mem.") at 4-26; *see* Defendant's Brief ("D. Mem.") at 2-9.

1

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of ALJ, the court concludes that, as detailed herein, the ALJ improperly discounted plaintiff's subjective symptom statements connected to her mental health impairments.  The court therefore remands this matter to the Commissioner for further proceedings in accordance with the principles and instructions enunciated herein.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 38 years old on her alleged disability onset date.  AR at 69, 84. Plaintiff completed two years of college and has past relevant work as a file clerk and a histology technician.  AR at 61, 268.

On August 26, 2022, plaintiff filed applications for DIB and SSI due to tightness of the right neck and right shoulder, limited movement of the right arm and hand, numbness and tingling of the right thumb and right index finger, limited abilities to do daily tasks, and depression and low self-esteem.  AR at 70, 85.  The applications were denied initially on February 21, 2023 and upon reconsideration on May 1, 2023, after which plaintiff filed a request for hearing.  AR at 20, 69-118, 138.

On January 30, 2024, plaintiff, represented by counsel, appeared telephonically and testified at a hearing before the ALJ.  AR at 42-68.  The ALJ also heard testimony from Aida Worthington, a vocational expert.  AR at 61-65.  On April 1, 2024, the ALJ denied plaintiff's claim for benefits.  AR at 20-31.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since October 15, 2019, the alleged onset date.  AR at 23.

At step two, the ALJ found plaintiff suffered from the severe impairments of cervical spine strain, right shoulder strain, right wrist strain, major depressive disorder, generalized anxiety disorder, obsessive-compulsive disorder, and posttraumatic stress disorder (PTSD).  *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1.  AR at 23.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"), and determined plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the limitations that plaintiff:

can lift and carry 20 pounds occasionally and 10 pounds frequently; can stand and walk for 6 hours in an 8-hour workday; can sit for 6 hours in an 8-hour workday; can frequently push and pull with right upper extremity; can perform the postural activities occasionally; can perform frequent overhead reaching bilaterally; can perform frequent handling and fingering with the right hand; is limited to work involving simple repetitive tasks; and is limited to work involving no more than occasional interaction with co-workers and supervisors; should not have interaction with the public; and should not work in jobs that involve more than occasional changes in the workplace.

AR at 24-25.

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work as a file clerk or a histology technician.  AR at 29-30.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including routing clerk, marker, and mail clerk.  AR at 30-31.  Consequently, the ALJ concluded plaintiff did not suffer from a disability, as defined in the Social Security Act, from October 15, 2019 through the date of the decision.  AR at 31.

Plaintiff filed a timely request for review of the ALJ's decision, which the Appeals Council denied.  AR at 1-7, 208-09.  The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits.  42 U.S.C. § 405(g).  The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence.  *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended).  But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff argues that the ALJ impermissibly rejected her subjective symptom testimony connected to her mental health impairments.  P. Mem. at 4-26; Reply at 2-5.

The court looks to Social Security Ruling ("SSR") 16-3p for guidance on evaluating plaintiff's alleged symptoms.  In adopting SSR 16-3p, the Social Security

4

Administration sought to "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017).

> [SSR 16-3p] makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms, and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

*Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (cleaned up).

To evaluate a claimant's symptom testimony, the ALJ engages in a two-step analysis. *Christine G. v. Saul*, 402 F. Supp. 3d 913, 921 (C.D. Cal. 2019) (citing *Trevizo*, 871 F.3d at 678). First, the ALJ must determine whether the claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, if plaintiff satisfies the first step and there is no evidence of malingering, the ALJ must evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which they limit her ability to perform work-related activities. *Id.*

In assessing intensity and persistence, the ALJ may consider: the claimant's daily activities; the location, duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; other treatment received; other measures used to relieve the symptoms; and other factors concerning the claimant's functional limitations and restrictions due to the symptoms. *Id.* (citing 20 C.F.R. § 416.929); SSR 16-3p at *4; *Smolen v. Chater*, 80 F.3d 1273, 1283-84 n.8 (9th Cir. 1996)). To reject the claimant's subjective symptom statements at step two, the ALJ must provide "specific, clear, and convincing" reasons, supported by substantial evidence in the record, for doing so.

*Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281, 1283-84.

### **Plaintiff's Subjective Symptom Testimony**

The ALJ summarized plaintiff's subjective testimony about her mental health symptoms and limitations as follows.[1]  Plaintiff alleges disability due to depression.  AR at 25, 267.  She and her mother claim plaintiff has difficulty remembering, completing tasks, concentrating, following instructions, and getting along with others, and experiences stress, anxiety, and depression.  AR at 25, 308, 314, 318, 324, 328, 334.  Plaintiff reported to a workers' compensation doctor that she was exposed to stress, work pressure, overload, and incidents of harassment by her supervisor, and developed symptoms of anxiety, depression, and insomnia following her work exposure.  AR at 27, 385.  During a psychiatric consultative examination, plaintiff reported depression, anxiety, stress, episodes of crying, fatigue, low motivation, and trouble with concentration and memory.  AR at 27, 1249.  Plaintiff continued to complain of anxiety, depression, OCD, PTSD, and insomnia in November 2023 and January 2024.  AR at 28, 1280-1369, 1371.  In November 2023, she complained of poor focus/concentration and impaired memory.  AR at 28, 1283.  At the hearing, plaintiff testified she gets stressed and anxious.  AR at 25.

Plaintiff highlights additional portions of her hearing testimony.  She testified she spends most of the day in her room, sometimes watching TV, but that makes her cry too because just look at "how pretty they are and I don't look that good."  P. Mem. at 4 (citing AR at 55).  She will turn off the TV and start crying and cover herself in a blanket.  *Id.* (citing AR at 56).  She cannot sleep because she "think[s] all this crazy stuff and a lot of things, random stuff comes to [her] mind."  *Id.*  She rarely leaves her home, except for doctor appointments, and her mother usually drives her.  *Id.* (citing AR at 56-57).  She

---

[1]    Because plaintiff does not challenge the ALJ's evaluation of her subjective symptom testimony connected to her physical health impairments, the court does not discuss plaintiff's subjective physical health testimony.

last drove over a year before the hearing. *Id.* (AR at 57). She does not socialize with any friends. *Id.* She hates showering, hates taking off her clothes, and hates changing her clothes. *Id.* at 5 (citing AR at 58). Once or twice a week, her mother reminds her about her hygiene by telling her she smells. *Id.* Some days, she does not leave her room because she does not want her mom to see her or tell her she needs to shower. *Id.* (citing AR at 59). Her medication sometimes helps and sometimes does not. *Id.* (citing AR at 60). She explained that she still cries a lot, talks to herself a lot, and hates herself a lot. *Id.* After working for three to four months, she was given the option to quit or be fired because she made multiple mistakes and took multiple breaks to go to the bathroom and cry. *Id.* at 5-6 (citing AR at 47). She testified that her psychological problem is worse than her physical problem. *Id.* at 7 (citing AR at 54).

**Analysis**

At the first step for evaluating a claimant's symptom testimony, the ALJ found plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR at 25. At the second step, the ALJ found that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* Because the ALJ did not find any evidence of malingering, the ALJ was required to provide specific, clear and convincing reasons, supported by substantial evidence, for discounting plaintiff's testimony.

Plaintiff contends the ALJ's analysis of her symptom testimony is flawed because the ALJ failed to identify the testimony she found not credible. P. Mem. at 7. Plaintiff also argues that the ALJ discounted her testimony due to a lack of objective medical evidence and unspecified other evidence to support plaintiff's testimony, which is error. *Id.* at 8.

Where an ALJ rejects a claimant's testimony, the ALJ must "specifically identify the testimony [from the claimant] that she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d

7

1090, 1102 (9th Cir. 2014) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).  Here, the supposed disconnect between plaintiff's testimony and the inconsistent medical evidence could have been articulated more clearly.  It is a somewhat close call whether the ALJ's juxtaposition of plaintiff's testimony with the medical and other evidence cited is sufficiently clear for the court to evaluate.  AR at 27-28; *see Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJs are not required to "perform a line-by-line exegesis of the claimant's testimony, nor do [the regulations] require ALJs to draft dissertations when denying benefits" (citation omitted)).  The ALJ notes plaintiff's testimony that she suffers from depression, anxiety, stress, low motivation, and difficulties with memory and concentration.  AR at 25, 27-28.  The ALJ then summarizes her medical records, which include some normal findings but also diagnoses of anxiety, depression, and stress, and which the ALJ found overall to "reveal [plaintiff] having some moderate mental issues."  AR at 27-29.  The court can make an educated guess as to how the medical evidence may be viewed as undermining plaintiff's testimony regarding her mental health, but on balance, the ALJ falls short of identifying the testimony he finds not credible and explaining what evidence undermines it.

Moreover, the ALJ erred by discounting plaintiff's symptom testimony on the sole ground that it was "not entirely consistent with the medical evidence and other evidence in the record."  AR at 25.  The lack of objective medical evidence to support a plaintiff's claimed limitations and symptoms is a factor that may be considered when evaluating the testimony, but it is insufficient by itself.  *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (lack of corroborative objective medical evidence may be one factor in evaluating subjective symptom testimony); *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain"); *accord Christine G.*, 402 F. Supp. 3d at 923.  Here, the ALJ only cited the lack of supporting medical evidence and other evidence as a reason to discount plaintiff's testimony.

The Commissioner argues that plaintiff's failure to seek mental health treatment for more than three years after the alleged disability onset date undercuts plaintiff's symptom testimony.  D. Mem. at 4.  But the ALJ did not cite this as a reason for discounting plaintiff's symptom testimony.  The ALJ did note that plaintiff was not seeing a psychiatrist or therapist or taking psychotropic medications at the time of her psychiatric consultative examination and State Agency initial review, but that was in the context of the ALJ's evaluation at step three of the sequential evaluation, discussion about what plaintiff reported to the consultative examiner, and evaluation of the medical opinion evidence.  AR at 24, 27, 29.  Nowhere did the ALJ indicate this was a reason for discounting plaintiff's symptom testimony.  The court's review is limited to the reasons actually given by the ALJ in discounting plaintiff's symptom testimony.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."  (citation omitted)).[2]

---

[2]     In the Reply, plaintiff argues that the ALJ correctly did not fault her for failing to seek mental health treatment until 2023 because "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Reply at 5 (quoting *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-300 (9th Cir. 1999)) (citation omitted).  The court agrees that the ALJ properly did not rely on a failure to seek prompt mental health treatment to discount plaintiff's symptom testimony, given plaintiff's reasons for her initial failure to seek treatment.  *See Orn*, 495 F.3d at 638 (stating that the failure to seek treatment may be a basis for an adverse credibility finding unless there was a good reason for not doing so).  At the hearing, plaintiff testified that she did not seek treatment earlier because of her cultural background and opposition from her family, making her nervous "to air [her] dirty laundry to a stranger."  AR at 55, 58.  These are reasons that would prevent the ALJ from properly discounting plaintiff's symptom testimony on the basis of failure to seek prompt mental health treatment.  *See Mou v. Berryhill*, 2017 WL 1177978, at *23 (N.D. Cal. Mar. 30, 2017) (finding ALJ erred by reasoning that claimant's failure to promptly seek mental health treatment undermined her credibility where claimant cited cultural reasons for her delayed treatment).  Thus, the failure to seek prompt mental health treatment would not be a clear and convincing reason to discount plaintiff's symptom testimony here in any event.

9

In sum, the only reason the ALJ gave for discounting plaintiff's symptom testimony was that her subjective symptoms were not supported by the objective medical evidence and other evidence. By itself, this was not a clear and convincing reason. And indeed, the ALJ also failed to clearly identify the testimony he found not credible and what evidence undermined it. The ALJ therefore erred in discounting plaintiff's symptom testimony regarding her mental health impairments.

## V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014) (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021.

Here, as set forth above and as requested by plaintiff, remand for further proceedings is appropriate because there are outstanding issues that must be resolved

before it can be determined whether plaintiff is disabled. *See* Reply at 6. The ALJ must reconsider plaintiff's testimony regarding her mental health impairments and either credit her testimony or provide clear and convincing reasons to reject it. The ALJ must then reassess plaintiff's RFC, and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

Dated: March 31, 2026

SHERI PYM
United States Magistrate Judge